UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTOINE NATHANIEL JACKSON,

        Plaintiff,

v.

CHAD DAUGHERTY,

        Defendant.
_____/

Case No. 1:18-cv-346

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU), also in Ionia, Michigan. Plaintiff sues MTU Prison Counselor Chad Daugherty.

Plaintiff alleges that, on April 1, 2017, he was elected to serve on the MTU Warden's Forum as a housing unit representative of Unit B. (Compl., ECF No. 1, PageID.3.) Upon consultation with fellow unit members, Plaintiff identified several problems on his unit including: dust and spider webs in cell intake and exhaust vents; cells needing painting; toilets too close to bunks; cell windows needing caulking; timers on cell toilets; usage of bleach; and outbreaks of scabies and spider bites. (*Id.*) By July of 2017, Plaintiff's "constituents" voiced a concern that no action had been taken. (*Id.*) During a July, 2017 meeting of unit representatives, at Plaintiff's urging, a quorum of representatives voted to put the issues Plaintiff had raised on the Warden's Agenda for the August forum meeting. (*Id.*)

On July 20, 2017, MTU Residential Unit Manager (RUM) John Payne met with Plaintiff regarding the issues Plaintiff had placed on the agenda. (*Id.*) RUM Payne told Plaintiff he would call Defendant Daugherty to do a cell inspection to determine the issues that required attention. (*Id.*) About an hour later, Defendant Daugherty visited Plaintiff and chided him for being a tattletale. (*Id.*, PageID.4.) Plaintiff does not indicate whether Defendant Daugherty ever conducted the inspection. Nonetheless, it appears Defendant Daugherty may have conducted the inspection because, Plaintiff alleges, Defendant Daugherty, at RUM Payne's direction, typed out approximately 30 Class III misconducts against members of Plaintiff's unit because their cells were not in compliance with housekeeping rules. (*Id.*; Prisoner Grievance Appeal Form, ECF No. 1-1, PageID.22.) The only details Plaintiff supplies with regard to the noncompliance is that it included "having items stored on unauthorized surfaces in their cells" and "each actual room violation was different in each prisoner cell." (Compl., ECF No. 1, PageID.4.)

The misconduct reports were prefaced with the following statement: "Due to the block rep meeting, it has been brought to my attention that unit/cell cleanliness is becoming an

2

issue." (Prisoner Grievance Form, ECF No. 1-1, PageID.12.) Plaintiff contends that Defendant Daugherty's words implied that Plaintiff had brought to the attention of Defendant Daugherty the specific conduct that formed the basis for the misconduct report. (Compl., ECF No. 1, PageID.4.) Plaintiff complains that he was labeled a "rat", subjected to threats of physical altercations, and commanded to pay for commissary goods. (*Id.*) Ultimately, after Plaintiff complained, MTU Warden Dewayne Burton pulled all of the misconduct tickets. (*Id.*, PageID.5; Second Step Grievance Response, ECF No. 1-1, PageID.19.) Nonetheless, Plaintiff was transferred to the Ionia Correctional Facility on August 9, 2017. (Compl., ECF No. 1, PageID.5.)

Plaintiff claims Defendant Daugherty's inclusion of the statement regarding the block rep meeting in the Class III misconduct reports violated Plaintiff's constitutional rights. Plaintiff seeks $50,000.00 in punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff complains that Defendant Daugherty's inclusion of the "Due to the block rep meeting . . . ." sentence violated Plaintiff's First Amendment rights because it was in retaliation for Plaintiff's placing the cleanliness issue on the Warden's Forum Agenda. Plaintiff also contends that the inclusion of that language demonstrates that Defendant Daugherty was deliberately indifferent to Plaintiff's safety.

A. First Amendment retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was

4

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claims fails at the first step. Plaintiff's complaint clearly alleges that he was acting on behalf of the other inmates in B Unit when he included the cell cleanliness issues in the Warden's Forum Agenda. Plaintiff has "no First Amendment right to represent other inmates in presenting their grievances absent a showing that 'the inmate[s] receiving the assistance would otherwise be unable to pursue legal redress.'" *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see also Vandiver v. Martin*, 48 F. App'x 517, 519-520 (6th Cir. 2002) ("VanDiver has not demonstrated that the inmates he represented on the warden's forum could not have been represented by another inmate, or that they could not bring any concerns they may have to the attention of prison officials without VanDiver's assistance. Because VanDiver has not established that he was engaging in protected First Amendment activity as a warden's forum representative, his retaliation claim . . . fails."). Accordingly, Plaintiff has failed to state a First Amendment retaliation claim.

B. Eighth Amendment

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v.*

*Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant Daugherty was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).

In *Farmer*, the Supreme Court rejected an objective standard for deliberate indifference—a standard which would allow prison officials to be held liable if they should have known of a substantial risk to inmate safety but did not have actual knowledge of the risk. *Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Plaintiff draws a direct connection between a risk to Plaintiff's safety and Defendant Daugherty's use of the sentence: "Due to the block rep meeting, it has been brought to my attention that unit/cell cleanliness is becoming an issue." That risk, however, is not inherent in the words Defendant Daugherty used. Plaintiff alleges that he solicited information from the population of his housing unit. The feedback included complaints regarding the cleanliness of the cells. Plaintiff raised that as an issue for the Warden's Forum Agenda. RUM Payne directed Defendant Daugherty to inspect the cells based on Plaintiff's raising the issue. Daugherty identified cells that did not comply with housekeeping rules and, accordingly, wrote minor misconduct reports. Defendant Daugherty accurately explains the reason for his looking into cell cleanliness. There is nothing inherent in the words used that evidence Daugherty's knowledge that a risk to Plaintiff would result.

Certainly, if Defendant Daugherty had identified Plaintiff as a "rat" or written that Plaintiff reported the infraction for which the minor misconduct was written, the risk from such

words might be sufficiently obvious to permit an inference of knowledge. *Street v. Corrections Corp. of America*, 102 F.3d 810, 815-816 (6th Cir. 1996). Here, however, Plaintiff simply fails to offer any facts from which the Court might infer that Daugherty **knew** harm would result from words that, under the circumstances, seem innocuous. Accordingly, Plaintiff has failed to state an Eighth Amendment claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: May 25, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE